<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| YI-CHENG PRODUCTS, CO., LTD., | : | |
|  | : | Civil Action No. 24-807 (SRC) |
| Plaintiff, | : | |
|  | : | |
| v. | : | **OPINION & ORDER** |
|  | : | |
| SNOW JOE, LLC, | : | |
|  | : | |
| Defendant. | : | |

<u>**CHESLER**</u>, District Judge

This matter comes before the Court on Plaintiff Yi-Cheng Products, Co., Ltd.'s ("Plaintiff" or "Yi-Cheng") unopposed motion for summary judgment under Federal Rule of Civil Procedure 56, (Dkt. 20). Defendant Snow Joe, LLC ("Defendant" or "Snow Joe") filed no opposition to Plaintiff's motion. The Court has reviewed the papers Plaintiff submitted and proceeds to rule without oral argument, pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Plaintiff's motion for summary judgment will be **GRANTED** in part and **DENIED** in part.

I.   **FACTUAL BACKGROUND.**

This dispute stems from Defendant's failure to pay Plaintiff for past due amounts owed to Plaintiff under the parties' vendor agreements. (Dkt. 20-1, Pl.'s Statement of Material Facts ("SUMF") ¶¶ 2–6.) Since October 19, 2019, Plaintiff manufactured products for Defendant, which were sold to consumers under Defendant's brand name. (SUMF ¶ 1.) Under the parties' "2021 Master Vendor Agreement," Plaintiff was required to "ensure that its production and inventory of

Snow Joe products will be sufficient to meet Snow Joe Purchase Order demands." (Id. ¶ 3.) Under the parties' "2022 Master Vendor Agreement," Plaintiff was required to "produce and sell to Snow Joe and Snow Joe shall purchase from Vendor, Snow Joe's requirements of the Goods set forth in the purchase Orders . . . ." (Id.)

Throughout 2023, the parties engaged in discussions and negotiations regarding the amount Defendant owed to Plaintiff for products Plaintiff manufactured and delivered to Defendant and also discussed potential repayment plans. (Id. ¶¶ 5–10.)

Specifically, on January 13, 2023, Paul Riley Jr. ("Riley"), Defendant's Chief Operating Officer, (id. ¶ 5), emailed Plaintiff's attorney, Steven H. Bovarnick and Plaintiff's Owner and Chief Executive Officer, Frank Chen ("Chen"), that as of January 13, 2023, Defendant had an outstanding balance of $1,063,454.32. (Compl., Ex. A at 4.) In that same January 13, 2023 email, Riley suggested a nine-month payment plan. (Id.) In response, on January 17, 2023, Plaintiff's counsel responded to Riley rejecting the nine-month payment plan and offering four alternative payment plans.[1] (Id. at 3.)

After a few email exchanges between the parties, Riley responded on January 26, 2023 that Defendant could "agree to the 4th payment plan option (payment in full by May but with no interest."[2] (Id. at 1.) On January 31, 2023, Plaintiff's counsel responded that "omitting interest fails to account for the significant costs sustained by Yi-Chen due to your company's inability to pay its obligations" and suggested a payment plan involving six payments of $205,379.72, totaling

---

[1] The Court notes that the fourth payment plan is cut off from Plaintiff's exhibit and thus the Court has no way of discerning what monetary amount was considered in the fourth payment plan option. (See Compl., Ex. A at 3; Dkt. 20-3, Declaration of Steven H. Bovarnick ("Bovarnick Decl.") at Page ID 152.)

[2] Again, it is unclear to the Court what the precise terms of the fourth payment plan option entailed.

$1,232,278.32. (Compl., Ex C. at 13–14.) In this email, Plaintiff's counsel also noted that "there will be no new orders accepted by Yi-Chen until the balance has been cleared and as to those orders, advance payment must be made." (Id. at 14.)

Riley responded to counsel for Plaintiff's email and asked, "before I can get approval on this, I need clarity on the new orders stipulation. This does not include the existing orders awaiting shipment and in production correct?" (Id. at 13.) Chen responded that "right now all orders on hand will need to be pre-paid for shipments to go out. . . ." (Id. at 12.)

From May 2023 to August 2023, counsel for the parties exchanged emails indicating that the parties were discussing a 24-month repayment plan. (See id. at 3–7.) On August 10, 2023, Defendant "sent a Docusign signed by [Riley] for [Chen]'s signature" and Plaintiff's counsel asked Defendant's counsel to send a copy of the draft repayment agreement in Microsoft Word so that he could redline the repayment agreement and discuss with Plaintiff. (Id. at 2.) Plaintiff's counsel requested a copy of the repayment agreement in Microsoft Word again on August 14, 2023, August 15, 2023, and August 22, 2023. (Id. at 1–2.)

On August 31, 2023, Plaintiff's counsel emailed Defendant's counsel a "redline payment agreement." (Id. at 1.) The redline agreement crossed out language indicating that Defendant owed Plaintiff "1,231,293.70" and inserted new language indicating that Defendant owed Plaintiff "1,232,278.31," among other edits. (Id. at 21.)

Plaintiff alleges that on September 4, 2023, Plaintiff emailed Defendant with a revised version of the payment agreement.[3] (SUMF ¶ 9.) Plaintiff also alleges that on September 5, 2023, Defendant informed Plaintiff that Defendant "was unable to execute the repayment agreement as

---

[3] The Court notes that no such email was attached to any of Plaintiff's filings so that the Court could verify the truth of Plaintiff's assertion.

it was unable to commit to making payments as scheduled."[4]  (Id. ¶ 10.)  Plaintiff brought this action, in part, to recover the outstanding balance for products Plaintiff manufactured and delivered to Defendant.[5]

This action also involves goods that Plaintiff manufactured pursuant to Defendant's April 7, 2022 and December 30, 2022 purchase orders submitted to Plaintiff.  (Id. ¶ 11; Compl., Ex. D.)  The April 7, 2022 purchase order was for $84,412.00 and the December 30, 2022 purchase order was for $139,024.56, totaling $223,436.56 for both orders.  (Compl., Ex. D.)  Plaintiff, however, never shipped the goods Defendant ordered under these two purchase orders because of the outstanding balance due for orders previously delivered, as discussed above.  (SUMF ¶ 11.)  Plaintiff alleges that Defendant owes it $358,236.96 for these two orders.  (Id.)

On February 12, 2024, Plaintiff filed a complaint against Defendant asserting causes of action for account stated and unjust enrichment.  Plaintiff's account stated cause of action seeks a sum of $1,590,515.28 from Defendant "for goods manufactured by Plaintiff and provided to Defendant or which are in Plaintiff's possession pursuant to accumulated unpaid invoices."  (Compl. ¶ 25.)  Plaintiff's unjust enrichment cause of action seeks judgment against Defendant in the amount of $1,232,278.32 for the goods Plaintiff provided to Defendant that Plaintiff has not yet been paid for.  (Id. ¶¶ 28–30.)

On October 25, 2024, Plaintiff filed the instant motion for summary judgment on both counts.  Defendant did not file an opposition to the motion.

---

[4] The Court notes that Plaintiff offered no evidence in support of this statement.

[5] Though Plaintiff asserts that the amount owed to it under the 2021 Master Vendor Agreement and 2022 Master Vendor Agreement is $1,232,278.32, (SUMF ¶ 11), the evidence only shows that Defendant admitted that the amount due to Plaintiff is $1,231,293.70.  (See Bovarnick Decl., Ex. C at Response to Interrogatory No. 13, Page ID 217; Compl., Ex. C at 21.)

II.    **LEGAL STANDARD.**

Federal Rule of Civil Procedure 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (construing the similarly worded Rule 56(c), predecessor to the current summary judgment standard set forth in Rule 56(a)). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and material if, under the substantive law, the dispute would affect the outcome of the suit. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court "must view the evidence 'in the light most favorable to the opposing party.'" Tolan v. Cotton, 572 U.S. 650, 657 (2014) (quoting Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970)). The court may not make credibility determinations or engage in any weighing of the evidence. See Anderson, 477 U.S. at 255; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (holding same).

Once the moving party has satisfied its initial burden, the nonmoving party must establish the existence of a genuine issue as to a material fact in order to defeat the motion. See Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing a motion for summary judgment cannot rest on "mere allegations"; instead, it must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; see also Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment.").

Where a motion for summary judgment is unopposed, the court need not "enter a summary judgment in favor of [Plaintiff] unless the facts set forth in the motion entitled [Plaintiff] to judgment as a matter of law." Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 176 (3d

Cir. 1990). Indeed, "the court still must find for itself that there is no genuine dispute of material fact and that the movant deserves judgment as a matter of law." United States v. Brace, 1 F.4th 137, 143 (3d Cir. 2021); see also Fed. R. Civ. P. 56(e)(3). "Where the moving party has the burden of proof on the relevant issues, this means that the district court must determine that the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law." Anchorage Assocs., 922 F.2d at 175.

### III.   DISCUSSION.

#### A. Account Stated Claim.

Plaintiff argues it is entitled to summary judgment on its account stated claim because there is no dispute that Defendant ordered products from Plaintiff, Plaintiff delivered those products to Defendant, and Defendant never paid Plaintiff for those products. (See Dkt. 20-2, Pl.'s Memorandum of Law ("Pl.'s Mem.") at 6.)

Account stated is a theory of liability under which a party may "recover the value of goods delivered or services rendered when there is an 'exact and definite balance . . . struck as to which both the creditor and the debtor assent.'" Manley Toys, Ltd. v. Toys R Us, Inc., 2013 WL 244737, at *5 (D.N.J. Jan. 22, 2013) (quoting 29 Williston on Contracts § 73:56 (4th ed. May 2024)). "An action on book account is one of the recognized remedies in New Jersey to recover the moneys due for goods sold and delivered . . . ." In re Gottlieb & Co., 245 F. 139, 146 (D.N.J. 1917), aff'd sub nom. Rosenberg v. Semple, 257 F. 72 (3d Cir. 1919). "To establish a claim for account stated, a plaintiff must show the defendant implied a promise to pay based on an admission of indebtedness to the plaintiff." Maersk Line v. TJM Int'l LLC, 427 F. Supp. 3d 528, 536 (D.N.J. 2019) (citing Harris v. Merlino, 137 N.J.L. 717, 720 (1948)). The admission of indebtedness may be "express or implied through conduct." Id.

Viewing the evidence in the light most favorable to Defendant, there is no dispute that Defendant "implied a promise to pay" based on its admissions that it owes Plaintiff $1,231,293.70 for unpaid balances on delivered goods in (1) the redlined draft repayment agreement that counsel for Plaintiff attached to its August 31, 2023 email, (Bovarnick Decl., Ex. A at Page ID 164 & 184), and (2) Defendant's response to Interrogatory No. 13 in its September 6, 2024 Revised Response to Plaintiff's First Set of Interrogatories, (id., Ex. C at Page ID 217).  The evidence, however, does not support Plaintiff's assertion that "on January 26, 2023, Defendant agreed to pay Plaintiff the sum of $1,232,278.32 in six installments of $205,379.72," (Pl.'s Mem. at 6), because the "4th payment plan option" referenced in Defendant's January 26, 2023 email, (Compl., Ex. A at 1), is omitted from the evidence Plaintiff submitted to the Court.[6]

As a result, the Court finds that there is sufficient evidence in the record for a fact finder to conclude that Defendant agreed to pay Plaintiff $1,231,293.70 for the products Plaintiff manufactured and delivered to Defendant.  Plaintiff, however, also asserts that it is owed $358,236.96 for the April 7, 2022 and December 30, 2022 purchase orders Defendant placed with Plaintiff.  (See Pl.'s Mem. at 6.)  This assertion does not support a claim for account stated for the amounts owed under both purchase orders.

First, there is no evidence that Defendant agreed to pay Plaintiff $358,236.96 for goods Plaintiff manufactured but did not deliver to Defendant.  Rather, the evidence shows that when Defendant asked Plaintiff whether the proposed repayment agreements would "include the existing orders awaiting shipment and in production," Plaintiff responded, "[a]s I had spoken to you before, right now all orders on hand will need to be pre-paid for shipments to go out," which does not answer Defendant's question in the affirmative.  (Compl., Ex. C at 12–13.)  Second, "[a]ccount

---

[6] See supra note 1.

stated is a theory to recover the value of goods *delivered*." Manley Toys, Ltd., 2013 WL 244737, at *5 (emphasis added); see also Cont'l Cas. Co. v. J.M. Huber Corp., 2022 WL 17340680, at *15 (D.N.J. Nov. 30, 2022) ("In short, an account stated cause of action is best adapted to relatively straightforward facts, *e.g.*, an unpaid bill for goods concededly delivered."). Plaintiff admits that the goods it manufactured worth $358,236.96 were never shipped nor delivered to Defendant. (SUMF ¶ 11.) An account stated cause of action is not the proper course for Plaintiff to try to recoup payment from Defendant for the April 7, 2022 and December 30, 2022 purchase orders.[7]

The elements of Plaintiff's account stated claim are met only for the goods delivered to Defendant. Plaintiff did not prove that it is entitled to an account stated in the amount of $358,236.96 for the undelivered goods as a matter of law. Based on the record, the Court grants summary judgment in favor of Plaintiff on its account stated claim in the amount of $1,231,293.70—the amount Defendant agreed to pay and admitted to owing Plaintiff for the products Plaintiff manufactured and delivered to Defendant.

### B. Unjust Enrichment Claim.

Plaintiff's motion for summary judgment also seeks judgment in its favor on its unjust enrichment claim. Plaintiff argues that it is entitled to a judgment in the amount of $1,232,278.32 because it delivered goods to Defendant that Defendant did not pay for. (See Pl.'s Mem. at 7–8.) Here, this Court already determined that there is no genuine issue of material fact that Defendant owes Plaintiff $1,231,293.70—based on Defendant's own undisputed admissions—for goods Plaintiff manufactured and delivered to Defendant under the 2021 Master Vendor Agreement and the 2022 Master Vendor Agreement and that Plaintiff is entitled to summary judgment on its

---

[7] If Plaintiff sought to recover for the goods it alleges it manufactured but did not deliver due to Defendant's prior outstanding balance, Plaintiff could have asserted a breach of contract claim instead of a claim for account stated.

account stated claim for those specific goods. Because the Court already granted Plaintiff's motion for summary judgment for account stated, the Court need not reach Plaintiff's unjust enrichment claim because Plaintiff may only recover once on this unpaid amount. See, e.g., MK Strategies, LLC v. Ann Taylor Stores Corp., 567 F. Supp. 2d 729, 733–34 (D.N.J. 2008) ("A quasi-contract claim cannot exist when there is an enforceable agreement between parties."); id. at 736 (noting that "a later determination" that the parties "entered an enforceable agreement will likely bar [plaintiff]'s unjust enrichment claim"); CDK Glob., LLC v. Tulley Auto. Grp., Inc., 2024 WL 3841861, at *10 (D.N.J. Aug. 16, 2024) (dismissing defendant's unjust enrichment counterclaim where it arose from "the same conduct as its breach of contract counterclaim" and an enforceable agreement between the parties was proven at trial).

Plaintiff's request for summary judgment on its unjust enrichment claim is therefore denied.

\*   \*   \*

For these reasons,

**IT IS** on this 8th day of January, 2025

**ORDERED** that Plaintiff's motion for summary judgment, (Dkt. 20), is **GRANTED** as to Plaintiff's First Count for Book Account in the amount of $1,231,293.70 and **DENIED** as to Plaintiff's Second Count for Unjust Enrichment.

       *s/ Stanley R. Chesler*
       STANLEY R. CHESLER, U.S.D.J.